IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PARIS INMAN-CLARK, | : | CIVIL ACTION |
| *Plaintiff,* | : | |
| v. | : | No. 19-cv-4717 |
| THE NEIMAN MARCUS GROUP LLC and THE NEIMAN MARCUS GROUP LTD LLC. | : | |
| *Defendants.* | : | |

### MEMORANDUM OPINION

**Goldberg, J.**                                                                                                       **November 13, 2024**

    This is a personal injury action wherein Plaintiff Paris Inman-Clark alleges she suffered long-term cognitive injuries after a large, framed picture fell on her head at a Neiman Marcus store in October of 2017.

    Plaintiff has filed a Motion for Partial Summary Judgment on the issue of liability. After review of the factual record, I conclude that the undisputed evidence establishes that Neiman Marcus breached the duty of care it owed to Plaintiff and that breach caused her to suffer certain injuries. Because a factual dispute remains regarding the extent of Plaintiff's injuries, I will grant summary judgment only on the liability portion of this case.[1]

---

[1] In a footnote of its Brief in Opposition to Plaintiff's summary judgment motion, Neiman Marcus asserts that Plaintiff filed her motion one week before trial, which was previously scheduled for July 15, 2024, and it was therefore untimely under the Court's Case Management Order and the Federal Rules of Civil Procedure. While the motion was untimely under the Case

1

I.      FACTUAL AND PROCEDURAL BACKGROUND

The following facts of record and any additional facts referenced throughout this opinion are, unless indicated otherwise, uncontroverted.

On October 27, 2017, Plaintiff was working part-time as an independent contractor modeling for the Reinhard Model & Talent Agency in Philadelphia. On that date, Plaintiff had been hired by Marchesa, a brand of clothing sold by Neiman Marcus (hereafter "Neiman"), to model its gowns for Neiman's customers at its store in King of Prussia, Pennsylvania. (Compl., ¶¶ 12-14; Defs.' Ans., ¶¶ 12-14; Defs.' Pretrial Memo., 1-2). The incident in question occurred while Plaintiff was waiting in the store's "Personal Shopper" dressing room for a Neiman employee to photograph her in one of the gowns. Plaintiff was standing in front of a full-length mirror and next to a wall on which two large, wooden framed paintings were hung, one above the other. Immediately after someone closed the entrance door to the dressing room, the top picture fell from the wall striking Plaintiff in the head. (Compl., ¶ 14; Defs.' Pretrial Memo., 2-3; Pl.'s Dep. Test. attached to Defs.' Mot. Preclude Expert Test. of Sylvia Deye, Ex. C, 14-16). Plaintiff told the first responding Neiman employee that she had been hit in the head when "a painting fell." That same store employee observed that a painting was down on the floor and saw a "minor bump" on the right side of Plaintiff's head. (Dep. of C. Wissa, attached to Defs.' Resp. in Opp. Pl.'s Mot. Summ. J. as Ex. C, 64, 70). Although Neiman theorizes that the picture could have fallen as the result of a variety of events, including "earthquakes or other environmental or weather factors," it is unable to cite to any specific contrary facts disputing Plaintiff's account.

---

Management Order, under Fed. R. Civ. P. 50(a)(2), "a motion for judgment as a matter of law may be made at any time before the case is submitted to the jury." In any event, the trial date of July 15, 2024 has now been moved to December 9, 2024 removing any prejudice to Neiman Marcus.

## II.     LEGAL STANDARDS

Federal Rule of Civil Procedure 56 provides, in relevant part that "[a] party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense on which summary judgment is sought." Fed. R. Civ. P. 56(a). The motion shall be granted and judgment entered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Stone v. Troy Construction, LLC, 935 F.3d 141, 148, n. 6 (3d Cir. 2019) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A party asserting that a fact cannot be factually supported or is genuinely disputed must support that assertion by:

> (A)     citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials; or
>
> (B)     showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

A "judge's function" in evaluating a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. To ascertain whether a genuine issue of material fact exists, the Court must review the record as a whole. Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150 (2000). Where a nonmovant asserts that a genuine dispute is premised on a fact, they are not required to conclusively establish the existence of that fact. Anderson, 477 U.S. at 248-249 ("The issue of material fact required . . . to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence."). "[R]ather, all that is

3

required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Id. at 249 (internal citation omitted). In ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in that party's favor. Tolan v. Cotton, 572 U.S. 650, 651 (2016) (per curiam); Scott v. Harris, 550 U.S. 372, 378, (2007).

Importantly, and directly related to the case before me, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). When the nonmoving party's evidence in opposition to a properly-supported motion for summary judgment is merely "colorable" or "not significantly probative," the Court may grant summary judgment. Anderson, 477 U.S. at 249. Nor will the "mere existence of a scintilla of evidence in support of the [nonmovant's] position" be sufficient – "there must be evidence on which the jury could reasonably find for the [nonmovant] on the evidence presented." Anderson, 477 U.S. at 252. In other words, "summary judgment is 'put up or shut up' time for the non-moving party; the nonmoving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group, Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006).

Moreover, "a party opposing summary judgment must present affirmative evidence – whether direct or circumstantial – to defeat summary judgment, and may not rely simply on the assertion that a reasonable jury could discredit the opponent's account." Estate of Smith v. Marasco. 318 F.3d 497, 514 (3d Cir. 2003). The moving party also need not produce evidence to disprove the opponent's claim, nor may an opponent prevail by merely discrediting the credibility of the movant's evidence. Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358,

4

1362, 1363 (3d Cir. 1992).  If the nonmoving party fails to "put up" evidence, that is, show facts in the record creating a genuine issue of material fact to support its claims and meet its burden to rebut the movant's motion, it will have failed to meet its burden at summary judgment.  Evans v. Sch. Dist. of Phila., Civ. No. 22-1410, 2022 U.S. Dist. LEXIS 224809 at * 16 (E.D. Pa. Dec. 13, 2022).

### III. DISCUSSION

In moving for partial summary judgment, Plaintiff argues that the evidence of record, including Neiman's own documents and the testimonial evidence of Neiman employees, establishes that it was negligent in improperly hanging and maintaining the nearly-thirteen pound picture which struck and injured her.[2]  Plaintiff also asserts that by failing to inspect the picture after it was hung, Neiman permitted a dangerous condition to exist on its premises.

Inman-Clark's complaint includes only a claim of negligence.  To succeed on a negligence claim under Pennsylvania law, four elements must be proven: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the actor's breach of the duty and resulting injury to the plaintiff (*i.e.*, proximate cause); and (4) actual loss or damage suffered by the plaintiff.  Lux v. Gerald E. Ort Trucking, Inc., 887 A.2d 1281, (Pa. Super. 2005).  The "mere happening of an accident does not entitle the injured person to a verdict; a plaintiff must show that defendant owed him a duty and that duty was breached."  Ney v. Axelrod, 723 A.2d 719, 721 (Pa. Super. 1999) (quoting Engel v. Parkway Co., 266 A.2d 685, 687 (Pa. 1970)).  "[I]n cases of falling objects the proof necessary to establish negligence under the circumstances need only be slight."

---

[2]   Neiman quibbles that the picture at issue weighs 12 pounds, however its own expert determined that it weighs 12.9 pounds. (Expert Report of K. Thibault, dated March 3, 2023, at 9 of 54, attached as Ex. 23 to Pl.'s Mem. of Law in Supp. of Mot. to Exclude Testimony of K. Thibault).

5

Quinn v. Funk Bldg. Corp., 263 A.2d 458, 461 (Pa. 1970) (citing, *inter alia*, Stewart v. Morrow, 178 A.2d 338, 340 (Pa. 1961)).

Generally, "[t]he duty which is owed in any given situation depends primarily upon the relationship between the parties at the time of the injury." Id. at 708.  "Unless there is a special relationship between the defendant and the plaintiff, the only duty owed by the defendant to the plaintiff is the general duty imposed upon all persons not to expose others to risks of injury which are reasonably foreseeable." Id.  Here, because Plaintiff was a business invitee, that special relationship existed.

The standard of care a possessor of land owes to one who enters upon that land depends upon whether that person is a trespasser, licensee, or invitee.[3] Newell v. Montana West, Inc., 154 A.3d 819, 832 (Pa. Super. 2016) (citing Jones v. Three Rivers Management Corp., 394 A.2d 546, 553 (Pa. 1978)).  Employees of independent contractors are "invitees" who fall within the classification of "business" visitors.  Id.  "The duty of care owed to a business invitee (or business visitor) is the highest duty owed to any entrant upon land," and has been described as follows:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger.

---

3    Pennsylvania law defines "invitee" as follows:

(1)   An invitee is either a public invitee or a business visitor.
(2)   A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.
(3)   A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of land.

Gutteridge v. A.P. Green Services, Inc., 804 A.2d 643, 655-656 (Pa. Super. 2002).

Gutteridge, 804 A.2d at 656.  Thus, there exists "an affirmative duty to protect a business visitor not only against known dangers but also against those which might be discovered with reasonable care."  Reinoso v. Heritage Warminster SPE LLC, 108 A.3d 80, 85 (Pa. Super. 2015) (quoting Campisi v. Acme Markets, Inc., 915 A.2d 117, 119 (Pa. Super. 2006)).

    A.    *Duty*

Neiman hung the painting in or around August 2017 when the personal shopping area was refurbished.  (Defs.' Pretrial Mem., 2-3).  This incident occurred approximately three months later.  Neiman does not dispute that on the day of this incident, Plaintiff was a business invitee in its King of Prussia Mall store.  (Pl.'s Mot. for Part. Summ. J., Ex. 1 at 1-3, Dep. of L. Haywood, Pl.'s MSJ Ex.9 at 90; Defs.' Resp. in Opp. to Pl.'s Mot. for Part. Summ. J., Ex. L).  Plaintiff has therefore established that Neiman owed her the duty to exercise reasonable care to protect her from both known dangers as well as those which it could have discovered on its premises in the proper exercise of its duty.

    B.    *Breach of Duty*

The undisputed record reflects that Neiman breached its duty of care to Plaintiff, its business invitee, in both negligently hanging a heavy object on a wall in an area Neiman knew would be frequented by business invitees, and in failing to inspect for this hazard.

Common sense dictates that heavy objects must be securely hung, especially in an environment such as a department store with many customers.  Regarding Neiman's breach of its duty to use reasonable care in hanging the object in question, I first note that paintings do not typically fall from walls on their own volition when they have been safely affixed.  Put another way, this incident is certainly the type that does not ordinarily occur absent negligence.  And the timing of this incident, where the painting fell only three months after it was hung, is further

7

circumstantial evidence of Neiman's negligence. The assessment of Neiman's Operations Manager Linda Haywood, and its Safety Committee that the painting was "not hung securely" is also powerful corroborative direct evidence of Neiman's breach of the duty owed to Plaintiff.[4]

Pennsylvania law has long held that "in cases of falling objects, the proof necessary to establish negligence under the circumstances need be very slight." Stewart v. Morrow, 170 A.2d 338, 340 (Pa. 1961). "Proof of negligence may be furnished by the circumstances themselves and it is not essential to have eye-witness testimony, but where the circumstantial evidence is offered because direct proof is not available, it must provide as the only reasonable inference the conclusion that the accident was caused by the negligence of the defendant." Lear v. Shirk's Motor Express Corp., 152 A.2d 883, 886 (Pa. 1959).

Linda Haywood, Neiman's Operations Manager recognized, as she must, that the failure to properly hang and secure the painting "could be" a hazard. (Haywood Dep., Pl.'s MSJ Ex. 9, 132). Considering this statement and the direct and circumstantial evidence set forth above, in order to defeat summary judgment on the issue of breach of duty, Neiman must point to contrary facts indicating that the painting was properly secured to the wall. This evidence could include an affidavit of the person who hung the painting, or some type of report or document created at the time the painting was hung detailing the safety precautions taken. Yet Neiman has failed to offer any facts that could establish that the painting was hung properly so as to not create a hazardous condition.

---

[4] In response to this statement, Neiman explains that Haywood was "reporting what the Safety Committee discussed during this meeting. . . ." (Defs.' Br. in Opp. to Pl.'s Mot. Summ. J., 6-7; Defs.' Ex. L; Pl.'s Mot. Summ. J., Ex. 8; Pl.'s MSJ Ex. 9 (L. Haywood Dep.), 33, 40-41, 127, 142).

Common sense also dictates that a business that is dependent on customers entering its premises should be aware of its duties to those customers.  Here, the undisputed record clearly demonstrates that Neiman recognized it had a duty to ensure the safety of its customers and employees, and had a detailed protocol for conducting periodic safety inspections of its premises. (Pl.'s Mot. for Part. Summ. J., Ex. 8, Ex. 9 at 40-41, 131-132).

Neiman employees Catherine Wissa, who oversaw the store's security, and Linda Hayward, the store's Operations Manager, explained that the store had a "Safety Committee"[5] whose members were obligated to frequently walk through the store to look for anything that might appear to be a hazard, and either fix or report those conditions.  (Dep. of C. Wissa, Pl.'s MSJ Ex. 2, Defs.' Resp. Ex. C, 99-105; Dep. of L. Haywood, Pl.'s MSJ Ex. 9, Defs.' Resp. Ex. M, 33-34, 37-39, 40, 47; Defs.' Resp. Ex. L).  Additionally, once a month, a Neiman's Safety Committee inspector walked through the entire store to check for potential hazards[6] and report the same in writing.  Neiman Corporate also required both Wissa and the store detectives to conduct monthly safety meetings with employees.  (Dep. of C. Wissa, Pl.'s MSJ Ex. 2, 105; Dep. of L. Haywood, Pl.'s MSJ Ex. 9, 33-34, 40, 47, 127; Pl.'s MSJ Ex. 8, 37-43, Defs.' Resp. Ex. L).

Linda Haywood nonetheless testified that while store safety inspectors inspected mirrors to make sure they were secure, they did not check any other wall hangings to make sure they were

---

[5] In its Pretrial Memorandum, Neiman states that the Safety Committee "was responsible for encouraging a safe environment as well as educating the stores on the importance of actively participating and maintaining a safe environment.  The Safety Committee's duties included identifying and assessing potential hazards and taking measures to effectively prevent and/or control such hazards." (Defs.' Pretrial Mem., 3).

[6] Among the potential safety hazards to customers and employees which Neiman identified for inspection were escalators, ceilings, floors, and objects on tables, but despite recognizing that mirrors, photographs, and paintings were hung from the walls and could pose a safety hazard, Neiman did not include the walls in its safety inspection protocol. (Wissa Dep., 102-108).

9

properly hung on the walls. (Q: "Did you ever look for safety hazards related to things falling off the wall?" A: "No." Q: "Other than mirrors, did you check any other wall hangings whatsoever to make sure that they were properly hung on the walls? A: "No.") (Dep. of L. Haywood, Pl.'s MSJ Ex. 9, 41, 47-48). Haywood made these statements while also acknowledging that an improperly hung painting could be hazardous. ("Q: Okay. Would an improperly hung painting be a hazard?" A: It could be, yes.") (Id, 132). And Haywood further acknowledged that included among the goals of the safety program was making sure "things don't fall on customers." (Q: Well, is one of the goals of the safety program to make sure things don't fall on customers? A: You could say that. Q: That's a yes? A: Yes.") (Dep. of L. Haywood, Defs.' Ex. M, 27).

Catherine Wissa similarly testified that when she was charged with performing safety inspections, she would inspect the entire Neiman store, looking specifically for deficiencies in every area of the building, but she did not recall ever having any type of paperwork indicating that the walls, or the paintings or photographs hung on those walls, were to be inspected for safety hazards. (Dep. of C. Wissa, Pl.'s MSJ, Ex. 2, 101-102, 105-108; See also, Pl.'s MSJ Ex. 8; Defs.'Resp. Ex. L). In short, Neiman has not produced any evidence that the painting in question was ever checked for proper installation or inspected anytime thereafter.

This undisputed evidence unequivocally establishes that Neiman recognized that it had a duty to exercise reasonable care to discover conditions on its premises which posed an unreasonable risk of harm to its invitees which they were unlikely to discover or protect themselves against. The record also establishes that store inspectors were not tasked with checking or looking for safety hazards related to the wall paintings being secure. Compare, Werner v. Hobby Lobby Stores, Inc., 741 S.E. 2d 270 (Ga. App. 2013) (upholding grant of summary judgment to defendant

store where record reflected evidence that routine inspections were made of shelf bracket which allegedly caused plaintiff's accident). Again, an occupier of premises owes its business visitor:

> "not only the duty not to injure him by unreasonably dangerous conduct while he is upon the premises, but also the affirmative duty to use reasonable care to discover unreasonably dangerous conditions of the premises and either put the premises in a reasonably safe condition for use in a manner consistent with the purpose of the invitation or warn him of the danger." Andrasko v. Chamberlain Mfg. Corp., 608 F.2d 944, 945 (3d Cir. 1979) (quoting Crotty v. Reading Industries, 345 A.2d 259, 264 (Pa. Super. 1975).

Given all of the above, I find that in failing to point to any evidence that the picture was hung securely so as to not create a hazard to business invitees and the undisputed facts establishing that Neiman recognized its duty to inspect its premises and failure to include inspection of heavy objects hung on a wall in a known business invitee area, Neiman breached the duty of care it owed to Plaintiff. In light of this undisputed evidence, no reasonable jury could find that Neiman did not breach its duty of care.

    C.    *Causation*

The next inquiry is whether any disputed facts exist regarding whether Neiman's breach of its duty of care caused an injury to the Plaintiff.

On this point, the record reflects that on October 27, 2017, Catherine Wissa received a phone call that she needed to go upstairs to the third floor personal shopping area because something had occurred. (Wissa Dep., Pl.'s MSJ Ex. 2, 58). When she got there, Wissa saw a painting down on the floor and found Plaintiff sitting in the dressing area looking "shocked." (Id., 61-62, Defs.' Resp. in Opp., Ex C, 70). When Wissa asked her what happened, Plaintiff said the painting fell off the wall and hit her head. (Pl.'s MSJ, Ex. 2, 61-62). When Wissa inquired if she was okay, Plaintiff didn't answer until after Wissa asked some general questions about whether she knew where she was and the time and date. (Id.). Wissa also asked where she had been hit

11

and Plaintiff pointed to the right side of her head, where Wissa observed a "minor bump." (Id., 63-64). Later that day, the bump had swelled to the size of a golf ball. (Dep. of Mary Avgerinos, attached to Pl.'s MSJ as Ex. 5, 22-23; Pl.'s Mem. of Law in Supp. of Mot. to Preclude Testimony of Kirk Thibault, Ex. 3 at 3). Wissa and Hayward then directed another Neiman employee, Deborah Lewis, to take Plaintiff to Urgent Care, where she was found to have a "lump on top of head, dizziness, neck pain, nausea, headache, eye pain/pressure behind eyes and loss of consciousness," and was subsequently diagnosed with a concussion. (Dep. of D. Lewis, attached to Pl.'s MSJ as Ex. 4, 27; Defs.' Resp. in Opp. to MSJ, Exs. B, D). These facts are unrefuted.

Neiman responds to this causation evidence in several ways, none of which are persuasive. First, Neiman continues to deny that the painting fell off the wall and struck Plaintiff in the head. (Defs.' Br. in Opp. to Pl.'s Mot. Summ. J., 1-2). Neiman stresses that Plaintiff was alone at the time of the incident and there were no other witnesses. Curiously, in support of this point, Neiman also notes that Plaintiff was briefly rendered unconscious, and could not recall anything after hearing the dressing room door shut. (Id., 10). While seemingly admitting that Plaintiff suffered an injury that rendered her "unconscious," Neiman still presses that there is no evidence the painting hit Plaintiff in the head. (Id., 10-11). Instead of citing to contrary facts disputing Plaintiff's account, Neiman continues to theorize that the picture could have fallen from a variety of events, which, as noted previously, Neiman claims could include "earthquakes or other environmental or weather factors." Neiman also speculates that another store model or patron leaning against the subject painting or grazing it caused the incident and Plaintiff's injury. (Id., 2, 16). Yet Neiman offers no earthquake data, weather reports, or any statements from other store models regarding the cause of Plaintiff's injuries.

An unsupported assertion is not evidence, and in advancing these theories Neiman ignores its own internal incident report that plainly states: "I received a phone call from the personal shopping area that a model, later identified as Paris Inman-Clark had been struck by a mounted painting. The painting fell off the wall and struck her on the right side of the head." (Pl.'s MSJ, Ex. 1, at 3). And Neiman offers no authority to support its theory that Plaintiff can only prevail on her motion by ruling out all other possible causes. See, Estate of Smith, 318 F.3d at 514 (party opposing summary judgment must present affirmative evidence and may not rely simply on the assertion that a reasonable jury could discredit the movant's account).

In addition to denying that the picture fell on Plaintiff and thus caused injury, Neiman continues to assert that disputed facts also exist on the issue of actual injury. Neiman premises this argument on alleged disputed facts from its proposed expert biomechanical engineer and its expert neurologist who, in turn, based much of his medical conclusions on those of the biomechanical engineering expert. Both witnesses have opined that the force from the falling picture was not enough to have caused Plaintiff to be concussed. (Id., 12-13). But the biomechanical engineer's medical opinion has been precluded and the neurologist has similarly been precluded from giving testimony which relies on the biomechanical engineer's opinion. And in any event, Plaintiff has not sought summary judgment on the extent of her injuries and that is precisely the area on which these witnesses have been proffered.

Neiman also completely disregards the observations and consistent accounts of its own employees who were called to the scene immediately after the incident who observed an injury in the form of a "minor bump" on Plaintiff's head. (C. Wissa Dep., Pl.'s MSJ Ex. 3, 61-64, Ex. 4, 27, 46-49). Neiman additionally ignores the consistent accounts of the incident given in Plaintiff's handwritten summary of the event written a few hours after it occurred, the observations of the

13

friends and family members who saw her later on the day of the incident, and the observations made by the physician who saw Plaintiff at the Express Med Urgent Care Center that she had a "lump on top of head," and was suffering from "dizziness, neck pain, nausea, eye pain and pressure and a loss of consciousness after being struck with heavy wooded picture." (See, e.g., Pl.'s MSJ, Exs. 1-9, 11-12; Urgent Care Records, attached as Ex. D. to Defs.' Resp. in Opp. to MSJ, at 1 of 3; Defs.' Resp. in Opp. to MSJ, Exs. A-C, E-K, M, Q, R).

Finally, notwithstanding that Neiman may be correct that the injuries for which Plaintiff is seeking to recover are instead attributable in part or whole to two minor automobile accidents which occurred on October 11, 2021, and May 18, 2022,[7] this does not change the undisputed fact that *some* injury *did* occur on the day of the incident, October 27, 2017, and that Neiman has an obligation to produce evidence to the contrary. Positing that plaintiff's injuries were only minor – goes to the extent of injuries, not the cause.  Again, under Rule 56(c)(1), a party asserting that a fact is genuinely disputed must support that assertion by citing to particular facts in the record, or showing the cited materials do not establish the absence of a genuine dispute.

In short, there is nothing in the record to refute that Plaintiff was found in the store dressing room on October 27, 2017 with a small but noticeable lump on her head, appearing dazed and complaining of a headache, dizziness and light sensitivity severe enough to warrant Neiman Marcus to direct one of its employees to take her to an Urgent Care for treatment where she was

---

[7] The medical records from the chiropractor with whom she began treating following the auto accident on October 11, 2021 reflect that Inman-Clark acknowledged she had previously suffered a traumatic brain injury in 2017, and that her complaints following the accidents were migraine headaches, dizziness, neck pain with spasms and mid-back pain radiating through the shoulders. (Defs.' Mot. to Preclude Expert Test. of Michael Lipton, Ex. B).

diagnosed with a concussion. Because Neiman has produced no contrary evidence that no injury occurred, the foregoing facts must be taken to be undisputed pursuant to Rule 56(e)(2).

## IV.     CONCLUSION

In summary, I find the undisputed material evidence in this case establishes the following:

(1)     Neiman Marcus owed to Plaintiff, a business invitee, the duty to exercise reasonable care by properly installing and inspecting its premises to ensure there were no known or readily discoverable hidden dangers which might cause harm. This included the duty to inspect heavy artwork and other objects suspended from the walls of its store to ensure they were safely and securely hung;

(2)     Neiman Marcus breached that duty by failing to properly install and regularly inspect the pictures hanging from its store walls;

(3)     As a result of that failure, an almost thirteen-pound framed picture fell from the personal dressing area wall striking Plaintiff's head;

(4)     This breach caused Plaintiff to be injured.

Factual issues remain as to the extent of the injuries attributable to the incident in question, but liability on the part of Neiman Marcus has been established as a matter of law and Plaintiff is entitled to the entry of summary judgment in her favor on liability.[8]

---

[8]     Defendants have also addressed the concept of *res ipsa loquitur* in their opposition brief to Plaintiff's motion. *Res ipsa loquitur*, which means "the thing speaks for itself," is a rule of evidence by which a plaintiff may advance his negligence case even though the evidence is insufficient to establish the elements of negligence, and may be applied to analyze a motion for summary judgment. McBride v. Am. Substance Abuse Professionals, Inc., 917 F. Supp. 2d 419, 426 (E.D. Pa. 2013). The Pennsylvania Supreme Court has called it "a shorthand expression for circumstantial proof of negligence – a rule of evidence," which "allows juries to infer negligence from the circumstances surrounding the injury." Quinby v. Plumsteadville Family Practice, Inc., 907 A.2d 1061, 1071 (2006); Lageman by Lageman v. Zepp, 237 A.3d 1098, 1104 (Pa. Super. Ct. 2020). The doctrine allows a plaintiff to "satisfy his burden of producing evidence of a defendant's negligence by proving that he has been injured by a casualty of a sort that normally would not have

An appropriate Order follows.

---

occurred in the absence of the defendant's negligence." Quinby, 907 A.2d at 1071. (internal quotation marks and citation omitted). The inference provides that "reasonable evidence, in the absence of an explanation by the defendants, [is] that the accident arose from their negligence." Id. at 1076.

There are several conditions which must exist for the *res ipsa* doctrine to give rise to an inference of negligence. These are: (1) the injury must be of a type not ordinarily occurring absent negligence; (2) the defendant must have had exclusive control of the instrumentality effecting the injury, so other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; (3) the indicated negligence is within the scope of the defendant's duty to the plaintiff; and (4) the plaintiff must not have contributed to the injury. Toogood v. Owen J. Rogal, D.D.S., P.C., 824 A.2d 1140, 1146 (Pa. 2003); Lageman, 237 A.3d at 1105 (citing Gilbert v. Korvette's Inc., 327 A.2d 94 (Pa. 1974) and Restatement (Second) of Torts § 328D (1964)). Although Pennsylvania has adopted the doctrine of *res ipsa loquitur*, it has also been held that it has no application when a patron suffers an injury in a store from a transitory danger, such as where a patron was struck by falling goods. Mullen v. Sam's East, Inc., Civ. No. 16-30, 2017 U.S. Dist. LEXIS 77099 at *10 (W.D. Pa. May 22, 2017) (quoting Neve v. Insalaco's, 771 A.2d 786, 789 (Pa. Super. Ct. 2001)). Here, where the record contains evidence from Neiman's own Safety Report that the picture was "not securely hung," the proof necessary to show negligence has been provided. For this reason, the applicability of *res ipsa loquitur* need not be considered.

16